**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-10001-CIV-GAYLES/SANCHEZ

STEPHEN DEMAREST,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 27) and Plaintiff's Motion and Memorandum in Support of Summary Judgment (ECF No. 29).[1] In his Amended Complaint, Plaintiff Stephen Demarest seeks review under the Administrative Procedure Act ("APA") of a Customs and Border Patrol ("CBP") Ruling Letter that ruled that a round trip voyage by a foreign-built vessel in which passengers embark and disembark at the same point in the United States violates the Passenger Vessel Services Act ("PVSA") unless the vessel travels into international waters. ECF No. 12. Following a careful review of the parties' filings, the pertinent portions of the record, and the applicable law, and being otherwise duly advised on the matter, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. 27, be **GRANTED** and Plaintiff's Motion and Memorandum in Support of Summary Judgment, ECF No. 29, be **DENIED.**

---

[1] The Honorable Darrin P. Gayles, United States District Judge, referred all pretrial matters to the undersigned. ECF No. 31.

## I.   BACKGROUND

### 1.  Statutory Background

The PVSA was originally enacted in 1886 and has since been amended multiple times.  *See Act of June 19, 1886*, ch. 421, § 8, 24 Stat. 81; *see also* ECF No. 26 at 5-6 ¶¶ 6-8; ECF No. 27-2 at 4-5.  The current version provides:

> (a) In General.—Except as otherwise provided in this chapter or chapter 121 of this title, a vessel may not transport passengers between ports or places in the United States to which the coastwise laws apply, either directly or via a foreign port, unless the vessel—
>
>> (1) is wholly owned by citizens of the United States for purposes of engaging in coastwise traffic; and
>>
>> (2) has been issued a certificate of documentation with a coastwise endorsement under chapter 121 or is exempt from documentation but would otherwise be eligible for such a certificate and endorsement.
>
> (b) Penalty.—The penalty for violating subsection (a) is $300 for each passenger transported and landed.

46 U.S.C. § 55103.[2]  With certain exceptions not applicable here, vessels built outside the United States, such as the one involved in this case, are subject to the PVSA's passenger transportation prohibitions.  *See* 46 U.S.C. §§ 12112, 55103(a)(2).

"[T]he United States treats its coastwise shipping trade as a jealously guarded preserve.  In order to participate in this trade, a vessel's credentials must be thoroughly American."  *Marine Carriers Corp. v. Fowler*, 429 F.2d 702, 703 (2d Cir. 1970).  Among other requirements, "[t]he ship must have been built in an American shipyard and be owned by American citizens."  *Id.*  The PVSA is accordingly part of a "legal structure that guarantees a coastwise monopoly to American

---

[2] The PVSA was previously codified at 46 App. U.S.C. § 289, but that provision was repealed and re-codified at 46 U.S.C. § 55103.  *See* Pub. L. No. 109-304, §§ 8(c), 19, 120 Stat. 1633, 1710 (Oct. 6, 2006).

shipping and thereby promotes development of the American merchant marine." *Autolog Corp. v. Regan*, 731 F.2d 25, 28 (D.C. Cir. 1984); *see also The Granada*, 35 F. Supp. 892, 893 (E.D. Pa. 1940) ("The legislative history of the enactment indicates that it was designed to protect our coastwise and domestic shipping."); *Am. Cruise Lines v. United States*, 96 F.4th 283, 285 (2d Cir. 2024) ("A series of federal maritime statutes colloquially known as the 'Jones Act' generally bars foreign-owned companies from engaging in 'coastwise' commerce."); *Sea Princess Servs., Inc. v. United States*, No. CIV. 95-00129, 1996 WL 33362120, at *4 (D. Guam June 25, 1996) (explaining that the PVSA "was designed to advance the United States Merchant Marine and Merchant Fleet by placing restrictions on the use of foreign owned/flagged passenger vessels in United States coastwise waters"). Indeed, through the PVSA, "Congress sought to meet the increasing threats to the practical monopoly of coastwise and domestic shipping which was to be preserved for United States ships." *The Granada*, 35 F. Supp. at 893.

## 2. Factual Background

Plaintiff Demarest is the owner and captain of a Swedish-built vessel named "Floridaze." ECF No. 26 at 1 (Plaintiff's Statement of Material Facts) ¶ 3; ECF No. 27-1 (Defendant's Statement of Material Facts) at ¶ 1. Plaintiff operates a sunset sightseeing boat tour, marketed as "Sunset on the High Seas," for a maximum of six passengers. ECF No 26 at 1-2 ¶¶ 5, 7; ECF No. 27-1 at ¶ 2. The tour typically consists of a "closed loop" that departs from Key Largo, Florida, proceeds into the Atlantic Ocean, crosses "the 3[-]mile boundary line between territorial waters and international waters," and then returns to its departure point. ECF No. 26 at 2 ¶¶ 6-7, ECF No. 27-1 at ¶¶ 2-4. However, "[i]n the event of high winds or other rough water conditions affecting passenger safety, the boat tour is rerouted closer to shore" or to "the leeward side of Key Largo," remaining entirely in domestic waters. ECF No. 26 at 2 ¶ 8; ECF No. 27-1 at ¶ 6.

On July 25, 2024, Plaintiff requested a ruling letter from CBP to determine whether operating the vessel entirely within domestic waters would violate the PVSA.  *See* ECF No. 27-1 at ¶ 5; *see also* AR0014-19.[3]  On October 4, 2024, CBP issued a ruling letter, *see* 19 C.F.R. Ch. I, Pt. 177, Subpt. A; 19 U.S.C. §§ 66, 1625, that determined the following:

> The transportation of passengers on a "voyage-to-nowhere" beyond the territorial sea in which the passengers embark and disembark at the same coastwise point, as described above, would not constitute a violation of 46 U.S.C. § 55103.  However, a rerouting of the voyage as described above to remain close to shore or enter Blackwater Sound, a voyage which would remain wholly within U.S. territorial waters would be in violation of 46 U.S.C. § 55103 and 19 CFR § 4.80a(b).

AR0004-05; *see also* ECF No. 27-1 at ¶¶ 7-8; ECF No. 26 at 2 ¶ 9.  Plaintiff filed an administrative appeal/reconsideration and CBP affirmed its decision on December 4, 2024.  AR0006-13; ECF No. 26 at 2 ¶¶ 10-11 (citing AR0006 and AR0028); ECF No. 27-1 at ¶ 9.  Plaintiff thereafter filed the instant case, requesting review of CBP's Ruling Letter under the APA.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  However, "[w]hen a party challenges agency action under the APA, 'the district court does not perform its normal role but instead sits as an appellate tribunal,'" *United States v. Schwarzbaum*, 24 F.4th 1355, 1364 (11th Cir. 2022) (quoting *Cnty. of L.A. v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999)), and "[t]he entire case on review is a question of law," *Pinero v. Jaddou*, 637 F. Supp. 3d 1300, 1306 (S.D. Fla. 2022) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).  *See also, e.g.*, *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  In such cases, "summary

---

[3] Citations to the Certified Administrative Record before the CBP, filed at ECF No. 24-2, are to the bates numbers found at the bottom of each page within the Administrative Record.

judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and [is] otherwise consistent with the APA standard of review." *Rolling Meadow Ranch Groves, LLC v. United States Dep't of Agric.*, 682 F. Supp. 3d 1253, 1257 (S.D. Fla. 2023) (quoting *Cottage Health Sys. v. Sebelius*, 631 F. Supp. 2d 80, 90 (D.D.C. 2009)); *see also Okeelanta Corp. v. U.S. Army Corps of Eng'rs*, No. 9:21-CV-81505-DMM, 2023 WL 3600665, at *6 (S.D. Fla. Mar. 21, 2023) (same), *aff'd in part, rev'd in part*, 132 F.4th 132 (11th Cir. 2025); *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246-47 (11th Cir. 1996) (explaining that a court conducting judicial review of agency action is to apply the APA standard of review to the administrative record on summary judgment).

Under the APA, courts are to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). When reviewing agency action, Courts no longer defer to an agency's interpretation of ambiguous statutes, and instead "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Indeed, "[a]s a general matter, when an agency interprets a statute, judicial review of the agency's interpretation is *de novo*." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 605 U.S. 168, 179 (2025).

## III.    DISCUSSION

The issue in this case—whether a foreign-built vessel's so-called "voyage to nowhere" is prohibited under the PVSA when that voyage remains entirely within U.S. territorial waters—is

one of statutory interpretation. Plaintiff argues that the phrase "transport . . . between ports or places" in the PVSA requires a stop at a "subsequent or intermediate domestic port." ECF No. 26 at 6-7 ¶ 12. In his view, "[i]f the trip returns to the point of origin without intermediate stops, then it is not a transportation between ports and places." *Id*. As a result, he contends, the CBP's ruling letter incorrectly interpreted the PVSA. *Id.* at 26 ¶¶ 79-80. Defendant disagrees. *See* ECF No. 27-2 at 10-13.

This case turns on the meaning of the language used in the PVSA, and the pertinent analysis thus begins by interpreting the statute. *Org. of Pro. Aviculturists, Inc. v. U.S. Fish & Wildlife Serv.*, 130 F.4th 1307, 1314 (11th Cir. 2025). "The Supreme Court has held that the 'starting point' of statutory interpretation is 'the language of the statute itself,'" *United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009) (quoting *Randall v. Loftsgaarden,* 478 U.S. 647, 656 (1986)), and "[t]he 'cardinal canon' of statutory interpretation is that 'courts must presume that a legislature says in a statute what it means and means in a statute what it says there,'" *id.* (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992)). "If the language of the statute is clear and unambiguous, [courts] will go no further and will employ that plain meaning." *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023). Additionally, "[c]ourts must give effect to every clause and every word of a statute, so that no clause or word is superfluous, void, or insignificant." *Id.*; *see also, e.g.*, *Aldrich*, 566 F.3d at 978-79 ("[S]tatutes should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *United States v. Ballinger,* 395 F.3d 1218, 1236 (11th Cir. 2005))).

"When words are not defined in a statute, they are 'interpreted as taking their ordinary, contemporary, common meaning,' and one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment." *EEOC v. Catastrophe Mgmt. Sols.*, 852

6

F.3d 1018, 1026 (11th Cir. 2016) (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014));

*see also, e.g.*, *Dawson*, 64 F.4th at 1236 ("[W]e look to the plain and ordinary meaning of the

statutory language as it was understood at the time the law was enacted." (quoting *United States*

*v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021))).  "Ordinarily, a word's usage accords with

its dictionary definition.  In law as in life, however, the same words, placed in different contexts,

sometimes mean different things." *Yates v. United States*, 574 U.S. 528, 537 (2015).

Here, the Court first considers the meaning of "between ports or places" under the PVSA,

which does not provide a definition for those terms, *see* 46 U.S.C. §§ 101-116, and then turns to

the dictionary for guidance on the common, ordinary meaning of those words.  *See, e.g.*,

*Catastrophe Mgmt. Sols.*, 852 F.3d at 1026.  Because the PVSA was enacted in 1886, the

undersigned looks to the edition of the Webster's Complete Dictionary of the English Language

that was published in 1886 and which provides the following pertinent definitions:[4]

- **Between**: "In the intermediate space of, without regard to distance; betwixt"; "From one

  to another of." *Between*, Webster's Complete Dictionary of the English Language 129

  (Authorized and Unabridged ed. 1886).

- **Port**: "A place where ships may ride secure from storms; an inlet, recess, or cove of water

  where vessels may float in safety; a harbor; a haven." *Port*, Webster's Complete Dictionary

  of the English Language 1014 (Authorized and Unabridged ed. 1886).

- **Place**: "[A]ny portion of space regarded as measured off or distinct from all other space,

  as related to any other portion, or as appropriate to some definite object or use; separate

  division; apartment; room; position; ground; site; spot; rarely, unbounded space." *Place*,

---

[4] Although the dictionary provides additional definitions for the words "between," "port," and "place," those additional definitions are inapposite in the context of the PVSA, which involves a vessel's transport of passengers.  Accordingly, those additional definitions are not included below.

Webster's Complete Dictionary of the English Language 993 (Authorized and Unabridged ed. 1886).  Recognized synonyms for "place" in 1886 included "locality; location; site; [and] spot."  *Id.*

The definitions above also align with the contemporary definitions of these words.  *See, e.g.,* Merriam Webster Online Dictionary (2025) (defining "between" as "in intermediate relation to" or "from one to another"; defining "port" as "a place where ships ride secure from storms"; and defining "place" as "physical environment," "an indefinite region or expanse," and "a particular region, center of population, or location"); Webster's Encyclopedic Unabridged Dictionary of the English Language 143, 1099, 1120 (1989) (defining "between" as "in the space separating (two points, objects, etc.)"; defining "port" as "a place along a coast in which ships may take refuge from storms; harbor"; and defining "place" as "a particular portion of space, whether of definite or indefinite extent").  Accordingly, the phrase "between ports and places" in the PVSA, both in 1886 and today, refers to the intermediate space from a harbor where passengers embark on a vessel to another space or site.

Here, passengers embark on the vessel for the trip in question at Key Largo, Florida, ECF No. 27-1 at ¶ 2; ECF No. 26 at 2 ¶ 7, which constitutes a "port" within the ordinary meaning of the word.  Next, the vessel travels between that port and an unspecified "place"—that is, a space, position, site, or spot—that is located somewhere within the territorial or domestic waters of the United States and that is either "closer to shore [than the 3-mile boundary line between domestic and international waters] in the Atlantic Ocean" or on "the leeward side of Key Largo," ECF No. 26 at 2 ¶¶ 6-7; *see also* ECF No. 27-1 at ¶ 6 (transporting passengers "closer to shore" or "into the Blackwater Sound at the leeward side of Key Largo").  Finally, the voyage returns to its port of origin.  ECF No. 26 at 2 ¶ 6; ECF No. 27-1 at ¶ 4.  Regardless of its return to the same port of

origin, however, by traveling from a "port" (in this case, Key Largo) to a "place" (here, either United States territorial waters in the Atlantic Ocean off the Key Largo coast or the Blackwater Sound on the leeward side of Key Largo), the vessel necessarily transports passengers "between" a "port" and a "place," and the voyage thereby falls within the scope of the PVSA.

Plaintiff would have this Court ignore the word "place" in the PVSA and find that a "voyage to nowhere" does not fall within the meaning of the statute because it does not stop at another port.  *See* ECF No. 26 at 6-7 ¶¶ 10-12.  But a common reading of the PVSA supports the conclusion that a foreign-built vessel's "voyage to nowhere" is indeed prohibited by the PVSA when it remains within U.S. territorial waters because the foreign-built vessel is travelling between a "port" and a "place."  Further, the PVSA's use of both the terms "ports" and "places" within the statute demonstrates that "ports" and "places" are distinct locations and that a "place" is not merely a "port."  *See, e.g.*, *Dawson*, 64 F.4th at 1236 ("Courts must give effect to every clause and every word of a statute, so that no clause or word is superfluous, void, or insignificant."); *Aldrich*, 566 F.3d at 978-79 ("[S]tatutes should be construed so that 'no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Ballinger,* 395 F.3d at 1236)).  Moreover, the use of phrases such as "between ports" or "between points" in other coastwise laws—without the use of the word "places"—further indicates that Congress intentionally included the word "places" in the PVSA to refer to physical locations other than ports.  *See* 46 U.S.C. § 55102 (limiting "transportation of merchandise by water, or by land and water, *between points* in the United States" to "coastwise-qualified" vessels) (emphasis added); *id.* § 30527(a)(1) (prohibiting liability limitations for personal injury or death for a "vessel transporting passengers *between ports* in the United States") (emphasis added).  Moreover, nothing in the PVSA limits a "place" to a port or other location on dry land, and, indeed, there are countless "places" within the territorial waters of

the United States to which vessels can travel and transport passengers.[5]  Accordingly, Plaintiff's argument that the applicability of the PVSA to a boat trip "is based on the port(s) reached," *see* ECF No. 26 at 6 ¶ 10, is unavailing because it focuses solely on the PVSA's use of the word "ports" and entirely disregards the statute's use of the word "places."

Lastly, the Court's interpretation of the statute aligns with the congressional intent behind the PVSA.  Limiting foreign-built vessels from transporting passengers on voyages that are solely within U.S. territorial waters is consistent with Congress' intent of prioritizing, supporting, and protecting the domestic merchant fleet, domestic coastwise shipping, and domestic shipbuilding. *See, e.g.*, *Am. Cruise Lines*, 96 F.4th at 285; *Autolog Corp.*, 731 F.2d at 28; *The Granada*, 35 F. Supp. at 893; *Sea Princess Servs., Inc.*, 1996 WL 33362120, at \*4; *see also Wirth Ltd. v. S/S Acadia Forest*, 537 F.2d 1272, 1280 n.32 (5th Cir. 1976) (recognizing Congressional policy "to protect and develop American merchant marine, shipbuilding, seamen, etc."); *Keystone Shipping Co. v. United States*, 801 F. Supp. 771, 773 (D.D.C. 1992) (recognizing the existence of an "ocean of legislative actions designed to protect the domestic shipping and ship building industries").

Accordingly, after applying the "traditional tools of statutory construction," *Loper Bright Enterprises*, 603 U.S. at 374, and analyzing "the text, structure, and purpose" of the PVSA, *Org. of Pro. Aviculturists, Inc.*, 130 F.4th at 1314, the undersigned concludes that CBP correctly determined that a foreign-built vessel's "voyage to nowhere" that transports passengers solely

---

[5] The maps submitted by Plaintiff that are found within the Administrative Record show three "places" within the waters of Key Largo near the Plaintiff's proposed voyages that are identifiable by name: Largo Sound, Blackwater Sound, and Lake Buttonwood Sound.  *See* AR0026-27, AR00590-51.  And of course, there are a myriad of other nearby "places" within the domestic waters near Key Largo, for example, Card Sound, the waters of John Pennekamp Coral Reef State Park, Biscayne Bay, and the waters of Biscayne National Park, as well as many other "places" within the waters off the Florida Keys.  There are also countless additional "places" in the territorial waters off the eastern seaboard of the United States, including such well-known "places" as Chesapeake Bay, Delaware Bay, Long Island Sound, and Cape Cod Bay, to name only a few.

within U.S. territorial waters falls within the meaning of the statute and is therefore prohibited by the PVSA.

### IV.   CONCLUSION

Based on the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 27) be **GRANTED** and that Plaintiff's Motion and Memorandum in Support of Summary Judgment (ECF No. 29) be **DENIED**.

Within fourteen (14) days from the date of this Report and Recommendation, that is, **by no later than March 10, 2026**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Darrin P. Gayles, United States District Judge.  Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice."  11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 24th day of February 2026.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Darrin P. Gayles
      Counsel of Record